We will start the morning's cases with United States v. Mayfield, No. 255013. Counsel you may proceed. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. My name is Ryan Villa. I represent the appellant, City Mayfield. I'm going to endeavor to reserve two minutes for rebuttal. Your Honor, we ask that the Court reverse the convictions of Ms. Mayfield below, both because of a violation of Miranda when evidence of her invocation to silence was introduced to the jury, requiring reversal of all counts for which she was convicted, and as well because insufficient evidence was presented that she committed the crime of perjury. Thus, on remand, that charge should be vacated and retrial barred due to the principles of double jeopardy. I'd like to actually start with Miranda, which I recognize is different than the way the briefing came out. But the critical point with respect to Miranda in the context of what we have sort of referred to as Doyle error is that this evidence was substantive evidence of Ms. Mayfield's invocation. Doyle, the lead Supreme Court case, was about impeaching a defendant who testified about things they did or did not say to police when they were initially interviewed. There's a lot of cases in this Court and the U.S. Supreme Court dealing with Doyle error in that context. This is a different context. I think it still fits into the umbrella of Doyle, but here this is substantive evidence of Ms. Mayfield's invocation when she didn't testify and she elected not to testify at trial. That was never cured by the trial court. It was never stricken. The jury was never told to disregard that evidence. And it came at perhaps the most critical time, the most critical piece of evidence that the government presented against Ms. Mayfield. Counsel, do you think that the debate on this issue on appeal centers on the plain error steps two and three? In other words, do you see the government's argument going more to those aspects of plain error than just whether there was an error itself? I do. You mean the government didn't directly concede error in the answer brief, but they did admit that it was improper for the detective to testify about her invocation of silence? Could you then put your arguments in those terms? In other words, there was error, assuming there's error. Why was it plain and why did it affect your client's substantial rights? I think that what's important is the critical piece of evidence against Ms. Mayfield, which the government argues as a reason to find her evidence sufficient for perjury and that there's not harmless error, is Ms. Mayfield telling the investigator in his police car a few days after the shooting that Ms. Davis did the shooting. That was the investigator's testimony. Ms. Mayfield's testimony at the grand jury was different. She said, I told the investigator what I heard from others, that Ms. Davis did it. But regardless, the government cues in on Ms. Mayfield's motive. So if she's lying to the investigator that Ms. Davis did the shooting, which really by the time of trial there's no dispute that Mr. Atkins did the shooting, not Ms. Davis. If she's lying to the investigator, that shows a motive to commit perjury at grand jury, shows a motive to obstruct justice for which she's on trial. And right before this supposed lie to the investigator, she had invoked her right to silence, said, I don't want to talk to you. Now, we as practitioners, jurists, we understand that's not supposed to be used as evidence, but a jury doesn't know that. That's why it's prohibited. That's why the U.S. Supreme Court in Hays called it some of the most prejudicial evidence you can admit at trial, because a jury looks at that and can infer without any further instruction from the trial court that that supports Ms. Mayfield's motive to lie. First, I'm going to invoke my right to silence. I don't want to talk to you. Then after I think about it for a few minutes and change my mind, I'm going to talk to you, but I'm going to lie. I've had time. Well, just one kind of almost a follow-up to my initial question about the plain error steps. Both in your brief and I think what I'm hearing this morning is you seem to be focused on linking the Miranda violation to the perjury conviction. Now, I also think your argument in your brief that if we agree with you on the Miranda error and plain error, that it goes to all of the counts, but it seems like you're zeroed in more on the perjury count. Is that an accurate understanding of your argument? It is. We certainly spend more time on the briefing with perjury because motive to lie is so essential to that crime. Counsel, the testimony about the rights invocation, my understanding is that it was only said once at trial. Is that accurate? That's correct. And then immediately thereafter, the witness testified that then she did in fact agree to talk with him and then spent the bulk of the testimony sort of relaying with that conversation of the statements that she gave the officer. Is that also accurate? Yes. Okay. So how was this what I'll phrase as a passing reference to a rights invocation used against Ms. Mayfield at trial? Was it argued by the government in closing? Was it in any way highlighted other than that one passing reference? The government nor defense counsel argued it in any way to the jury in closing. It was just sort of ignored, right? And nobody asked the trial court for any remedy. But that doesn't prevent the jury from using that piece of evidence in conjunction with the government's argument, which was that when Ms. Mayfield told the investigator that Ms. Davis fired the shots, not Mr. Atkins, that she was lying. Ergo, she had a motive to lie. Thus, that's why she would lie at the grand jury. That's why she would try to obstruct justice to protect her son, Mr. Atkins, and point the finger at Ms. Davis. Yeah, but how would her rights invocation in any way give rise to an inference of motive to lie? I mean, her motive to lie was pretty obvious. Wasn't it based upon her relationship with the defendant, being her son? And then the other woman who I think at grand jury, she said, was her daughter, not her biological daughter, but clearly a close, familiar relationship. So how would the rights invocation weight against the relationship she had with the defendant compare in terms of a motive to lie? Certainly, I think there's a separate argument for the parties to make that she would have a stronger motive to protect her son than her non-biological daughter, who she knew, according to her testimony, for a shorter period of time. I think it was four years or around that time frame. However, that doesn't change the fact that the jury can use the invocation as sort of the setup. I need to formulate my thoughts. I need to figure out what I'm going to say that my initial, according to the government's truth, if I say right away without invoking my right to silence, is going to come out. So I'm going to invoke my right to silence after being told Miranda. So now I can think about what I want to say and tell you a lie, according to the government's theory of the case, as well as support the motive, which the government did argue this, support the motive to obstruct justice. I mean, the Facebook live video, which is the primary piece of evidence about obstruction of justice, was a video sent by Ms. Mayfield to the mother of one of the witnesses because they knew each other and not necessarily what I would call a direct threat. You know, the classic, if you show up and testify, I'm going to hurt you. It's more of, you know, hey, your son's no good. You know, your son's a bad person. And part of that, of course, was whether he was going to cooperate at trial. We're not challenging the sufficiency of evidence with respect to that Facebook video, but it's not the strongest obstruction of justice case. So the government needed to present evidence of motive. And certainly there's motive because it's her son. But there's also, you know, a reason why we determined that Miranda invocations are so prejudicial and can't be heard by the jury. And it's a different case, right? Part of the discussion about perjury conviction is what can we what inferences can we draw from circumstantial evidence? If it's a murder case where you've got DNA and blood and, you know, eyewitnesses and guns and those sorts of things, someone's invocation really isn't that critical. But when it's a perjury case and an obstruction case where everything sort of hinges on Ms. Mayfield's motive and especially her motive to lie, the invocation becomes much more prejudicial because the jury can draw that inference that that's why she invoked, so she could figure out a story to tell, a lie to tell. Well, counsel, can I ask you about the perjury conviction? The statements at grand jury that I think from reading the briefs are probably most at issue is her response that she did not see who shot the victim. Is that an accurate recitation? It's difficult to discern. I think if you look at trial, it's all about who was the shooter, right? Was it Ms. Davis versus Mr. Atkins? I think on appeal, when we slice it up, the way you characterize it is pretty accurate. There are some secondary statements the government points to, but that's the primary. Well, given our review of a jury verdict here that did convict her beyond a reasonable doubt and the deference we give to that verdict, how can we reverse here for insufficiency when she also gave testimony about what she was looking directly at? I think his name was Mr. Brown, and she's sitting right next to them. Couldn't a rational juror conclude that she wasn't being truthful, that she had no idea or didn't see who shot him? Why is that so obviously false that we would not give deference to a jury verdict here? Well, two reasons. One, the literal truth defense when it comes to perjury, which makes inferences different than in the normal case. And the other reason is materiality, which I'll start there. We're talking about grand jury testimony, so the standard is, is there probable cause to believe Mr. Atkins was the shooter, Mr. Atkins committed the assault, that's what the grand jury was asked to decide. And her testimony at the grand jury provided probable cause for them. She testified to the grand jury that they were there, that Mr. Atkins and Ms. Davis were in the front seat, that the shooting came from the front seat, that she didn't see which one of them shot, but that she heard it, and that she had looked away when the shooting part occurred. That provided probable cause to the grand jury that Mr. Atkins was the shooter. It was left for the later day to decide is that self-defense or those sorts of things. So the standard at the grand jury makes her testimony does provide probable cause, and for the perjury prosecution makes it not material the way she described it in the grand jury as who was the shooter. It had to be either Ms. Davis or Mr. Atkins. Counsel, on the perjury conviction, I wasn't clear on whether you were making an argument on sufficiency relative to the mens rea element, the knowledge element. Are you making any argument about that? Not directly. I think it's related, but really it's the two elements that we focus on in the brief and that I'm focused on today are was the statement false under the literal truth idea, and then second, was it material? Does it matter that the alleged false statements weren't played out specifically in the indictment or the jury instructions? What's your understanding of how the government actually presented discrete alleged false statements to the jury at trial? Well, to be fair, the entire transcript was admitted as an exhibit. However, the testimony and the arguments from counsel all focused on who was the shooter. Was it Ms. Davis or was it Mr. Atkins? And then, you know, you get into, well, investigator Shanks says she told me Ms. Davis was the shooter. She testifies to the grand jury. I told Shanks I heard Ms. Davis was the shooter. There's some back and forth, too, in the grand jury about the things she saw on video. Apparently she was shown the video that morning versus what she saw. Can I just interject? Sure. I was trying to break this down a bit more to extract what I thought were maybe the statements. One was nobody discussed the shooting during the drive home. Wasn't that one of the alleged false statements? Let me just go through them and you can tell me. She didn't see any firearms in the car. She didn't know who shot Mr. Brown. She didn't see the shooting. Are all those statements in play here as far as you're concerned? They're all in play because they were admitted as evidence in the transcript, yes. However, I argue all of those with the exception of who shot are not material. Did she see Mr. Brown have a gun? Did she see Mr. Brown reaching for a gun? Were not material to the grand jury because the grand jury wasn't deciding self-defense. If she gave that testimony in a jury trial about self-defense, then we have a different argument. But they're not material to the grand jury presentation. What was material was who was the shooter. And that's where literal truth and materiality come into play. And I see that I've run out of time. May I just briefly conclude? Please do. But before you do, let me make sure. Judge Murphy, do you have anything further for counsel? No, I do not. Why don't you sum up? Sure. Just to sum up, back to who was the shooter. It wasn't literally false or the government didn't carry its burden for the literal truth defense, which is sufficiency because Ms. Mayfield's grand jury testimony did implicate Mr. Atkins. And it wasn't material in that context because in the grand jury, we're just deciding probable cause. We're not deciding beyond a reasonable doubt who was the shooter. Thank you. Thank you, counsel. May it please the court. Thomas Duncombe for the United States. The government wins this appeal because a rational jury could have found that the government proved, beyond a reasonable doubt, both the materiality and the falsity of Ms. Mayfield's grand jury testimony. And because there was no Doyle error in this case. Because Officer Shank's stray, unsolicited remark did not constitute the use of post-arrest silence by the prosecution. You're arguing no error at all. We are. And we elided error and plain error a little bit in our brief. And I apologize for any confusion that caused. But part of the reason is because most of the cases in this court on Doyle error are on preserved errors. And so they either assume or the government concedes that whatever the statement was, it was an error. And not only an error, but it was an error of constitutional proportion. And the trial stopped and there was a curative instruction. And so you have those cases like Williams and Lauder that are in that vein. In this case, we assert that there is a difference between an ill-advised comment and an error, which is a term of art for purposes of this court's review. What's your best case on that term of art? Well, this court's jurisprudence in general talks about whether there's an error, whether that error is plain. Well, I'm talking about what you said a minute ago. It has to be an error. It has to be a matter of constitutional proportion. Why wasn't this one of constitutional proportion? Yes. And to be clear, the cases that talk about whether it was an error of constitutional proportion are cases where the error is preserved. And so they — But it still has to be an error, though. So what makes this an error?  Well, the Lane case is one. I believe that's 1988 from this court that says merely bringing up in one reference the defendant's invocation is not a Doyle error because it doesn't constitute the use of the defendant's invocation against him or her. There was a case, and it may have been Lane, and I may be mixing up the facts, but where the prosecution referenced the defendant's invocation in an off-the-cuff way, and that wasn't the use of post-arrest silence against the defendant. So the cases do support that there's a difference between an inadvertent comment that shouldn't have been made and an error for purposes of plain error review or, in most of the cases that this Court has thus far, harmless error review. But can't inadvertent comments, as inadvertent as they may be, still be error? They can. But in this context, the error that Doyle speaks of is not just the mentioning of post-arrest invocation. It's the use by the prosecution of post-arrest invocation. And there was no use here. So I'm trying to understand what the rule statement might be based on your argument, that if there is reference to Miranda and invocation of Miranda, and there's no curative instruction from the court, as long as the prosecutor doesn't say anything more about it, then there's never an error. No, I didn't say there was never an error, but the cases do support that there is daylight between the prosecutor or the government witness made an off-the-cuff reference, and that is always an error. And if it's such a stray remark, if it's so off-the-cuff, that it doesn't constitute use, which, again, the case law is use, not mentioning, that's not an error. But in any event here, even if you strongly disagree with me on that point, there was no plain error here, because there was no use for the purpose of – for any purpose. When the trial judge heard the witness testify about a rights invocation, why wasn't it sort of plain at that point that the trial judge, Sue Esponte, should have interjected with a curative instruction? First of all, there is no case from this court or any confluence of circuits that says that that is a plain error if there's an off-the-cuff, unsolicited remark. The cases say that the error and the plain error would be use of the defendant's post-arrest silence, either as evidence of guilt or evidence of impeachment. We didn't have that here. And in the cases like Williams and Lauder, when they're in the constitutional harmless error analysis, either the government concedes or the court proceeds directly to, was this – was this harmless beyond a reasonable doubt, bless you. And in those analyses, they talk about the fact that it only came up for a few minutes. It was not repeated in closing. The government didn't intend for that to come out. And so they talk about those things in the context of whether it was harmless beyond a reasonable doubt. Well, that's – that's all the hindsight review. I'm talking about the moment the witness testifies about that invocation because, you know, as I understand Ms. Mayfield, part of the argument that's been made is this is said before the jury and it's sort of a setup then towards her statement about who had done the shooting. And then her motive, what was going on in her head, her reasons for making these statements is essentially the whole case, what she's charged with. And so are you saying that we only focus on the, quote, use and that a trial judge sitting in the courtroom observing a witness testify about a rights invocation is just supposed to sit back and say, well, let me see how this plays out. Let me see whether the prosecutor argues it at closing. Let me see the cross-examination of this witness. And then only then I'll decide whether there's security construction. No, and you're absolutely right that when we're talking about a hindsight review, it's different than when we're talking about prospectively. I think everyone in this room would agree that we would instruct judges, even if it seems inadvertent, to stop the proceedings and say, hold on, I want to address this and I want to make sure the jury understands this. But for purposes of the case law, there is a difference between a reference and use. And in some of the cases, because they've moved on to is this a constitutional harmless error or is it harmless beyond a reasonable doubt, they talk about that, you know, who brought it up, how long was it dwelled on. They talk about that in the context of the harmlessness. And even if this Court views it in that light, that we should view it as a plain error but talk about things like how long was it? Was it intentional? Did they harp on it? How strong was the evidence otherwise? If this Court purely looks at it, looks at that in the substantial rights column, the government still wins on that issue. And not just because You're saying that we skip over the first two, whether or not there was an error, whether or not it was a plain, and go to effective on substantial rights. Is it that the lack of use, as you argue it, is an important factor in that analysis? Yes, it is. Yes, I'm sorry, Judge Murphy. If we move on to harmless error analysis or plain error substantial rights analysis, the courts apply the Massey test, where one of the factors is what was the extent of the use? And what was, who brought it up first? And how was it brought up? So you get into things like that. We would assert that if it's not something that disqualifies this from being an error and not something that qualifies this from being a plain error, then it certainly is something that weighs against this being a violation of Ms. Mayfield's substantial rights. And I want to make clear, we disagree profoundly with my colleague's assertion that this came at the most critical time of the trial for purposes of the perjury charges. When the invocation was mentioned by Officer Shanks, that was the first witness of the trial. And then the later statement to Officer Shanks of Davis was the shooter, the jury would not have been in a position to realize the importance of the statement, not the invocation, but the statement, Davis was the shooter, until the last day of trial, when Agent Nechiporenko testified and they saw the transcript of what Ms. Mayfield had told the grand jury. It was only then that it was discussed that there was a discrepancy between what she had told affirmatively Officer Shanks about Davis was the shooter and what she had told the grand jury, which is Brown told his gang buddies that Davis was the shooter, his gang buddies told a white guy named Benjamin that Davis was the shooter, and a white guy named Benjamin told me. That's what I meant when I told Investigator Shanks. So this would most likely, being the first witness of the trial, have been a blip on the jury's radar when they were going back and deliberating on what are the inconsistencies in Ms. Mayfield's statements. Counsel, you just mentioned the grand jury transcript, so can you help us understand the discussion we just had about which statements were highlighted to the jury as being false and material that supported the perjury instruction because it's been presented to us. The whole transcript was admitted into evidence. I can assume the jury wasn't just told pick through there and find what you think is false. So which statements in the government's view are really at issue here? No, and the jury was not told pick through the transcript and find which you think are false, but it's important that because we're in a sufficiency of the evidence analysis, and I do want to answer your question directly and talk about some of those specific statements, but it is important that what you said earlier, Judge Federico, that we are in a situation where they did not have to allege in the indictment these are the specific statements from the grand jury transcript that were false. And the Strom case, and I think footnote 14 talks about the fact, even if we disagree with the government that this particular statement that they've highlighted for us was false, there were plenty of other statements for the jury to select from. And that's the case here as well. So counsel, that's an interesting argument. Does that mean that under our standard of review for sufficiency, if there was a statement in the grand jury transcript that the government didn't affirmatively present to the jury as false, but this court on review thought it was false, could we affirm on that ground? Yes, 100 percent yes. And the reason is because of this court's sufficiency jurisprudence. This court takes all the evidence, both direct and circumstantial, and the reasonable inferences to draw from that evidence, and that evidence included the grand jury transcript, which was Exhibit 61. And you can see the exhibit list on page 377 of Volume 1. Even if the statement wasn't mentioned at all? Even if the statement was not mentioned at all. As long as the exhibit's there and they can look at it and we can look at it and decide that there should be a perjury conviction. Yes. This court's review on sufficiency of the evidence is very deferential. Now, having said that, this court need not do that in this case, because there were a number of statements that the government did highlight to the jury that were false. Most notably, all the statements about I saw exactly what Brown was doing when he was both in front of the car and to the right of the car and just back a little bit with where he was standing, with what he was doing with his hands, with the fact that he had the gun out in his hands, and then there is no good reason given why she wouldn't have seen him being shot. She says, after I heard the gunshots, I got scared. And that's her explanation for why she didn't see Brown getting shot. She didn't see someone shooting. And then there's other inconsistencies from there, most notably from the transcript. She says that Brown, when he was standing in front of the car and in front of the store, pulled the gun out and was threatening with it. Well, counsel, some of the other – well, Mr. Buehler was saying earlier that at least some of the statements were not material. Do you think the issue of materiality is a little closer for some of these other ones? I'll give you an example. The statement about nobody said anything on the drive home, how is that material? So first of all, and I want to answer that question, but first of all, I just want to orient the court in terms of materiality. Just because this was a probable cause determination and not a beyond a reasonable doubt determination, that doesn't mean that materiality means something less than it does when you're in a trial. Something that would have had the natural tendency to influence the grand jury's determination or would have had the potential to influence that determination would have been material. Is the analysis different – maybe this goes in your direction – is the analysis of materiality different in the context of the grand jury than in the context of trial because the grand jury just needs to find probable cause? No. And I see that my time is out, but may I – the analysis is not different. And all the cases, whether you're talking about grand jury testimony or trial testimony, the standard is the same. If you look at Durham or you look at Strom, the standard for materiality is did it have a natural tendency to influence the grand jury or was it capable of influencing the grand jury? And the two questions that the grand jury had to answer were, number one, did Atkins shoot as opposed to someone else? And number two, did he shoot without justification? In other words, did he shoot with the intent to do bodily harm, as alleged in the indictment, or did he shoot because he was trying to protect the other people in the crowd? Which is a lot of what Ms. Mayfield was testifying to in the grand jury, that the affirmative testimony about he was standing in front of the car not only had his gun out when he was standing behind the car and to the right, but had his gun out and was threatening with it in front of the car. That's something that's demonstrably false from the video that we have in this case. Thank you. Can I ask one more? We have another question. Mr. Veal, a moment ago, said that by the time the Mayfield trial began, it was no longer in doubt that Mr. Atkins was the shooter. Can you help me understand why that was, and was the jury told that, or how did they know that? The only way that the jury would have known that is that Mr. Atkins got up and testified that, yes, I shot him, and said that, essentially, it was in self-defense. And his sister, Miko, testified that Brown had the gun out. And the jury may have been able to infer that from the cross-examinations of some of the government witnesses, focusing on the fact that Brown had a gun, focusing on the fact that Brown was clutching it at some points during the evening. But other than that, this was not – but certainly by the grand jury, which was long before the trial, it was very material who exactly was the shooter. And they were – you know, Ms. Mayfield was not the only grand jury witness, but it is – it strains the English language to say that her testimony supported probable cause on any of those points. Thank you. Thank you, counsel. I think we've exhausted the allotted time, so we will consider this case submitted. Thank you for your arguments. Counsel are excused.